954 F.2d 1253
 Robert Alan PROBERT, Plaintiff-Appellee,
v.
IMMIGRATION AND NATURALIZATION SERVICE; Richard A.
Thornburgh, Attorney General; Eugene P. McNary,
Commissioner, Immigration and Naturalization Service; James
H. Montgomery, District Director, Immigration and
Naturalization Service, Defendants-Appellants.
 No. 91-1055.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 8, 1991.
Decided Jan. 29, 1992.
 
 Seymour Glanzer, Edward N. Leavy, Roslyn A. Mazer (briefed), Washington, D.C., Marshal E. Hyman, Marshal E. Hyman & Associates, Birmingham, Mich., Harold S. Fried, Fried, Saperstein, De Vine & Kohn, Southfield, Mich., Mark J. Kriger (argued), Detroit, Mich., for plaintiff-appellee.
 L. Michael Wicks, Asst. U.S. Atty., Detroit, Mich., David J. Kline, U.S. Dept. of Justice, Civ. Div., Washington, D.C., David V. Bernal (argued and briefed), Office of Immigration Litigation, Washington, D.C., for defendants-appellants.
 Before MARTIN and NELSON, Circuit Judges, and JARVIS, District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 The Immigration and Naturalization Service appeals the order of the district court permanently enjoining them from detaining Robert Probert while deportation hearings are pending. The Immigration and Naturalization Service argues the district court erred in finding 8 U.S.C. § 1252(a)(2) unconstitutional as a denial of substantive and procedural due process and the right to be free from cruel and unusual punishment.
 
 
 2
 Probert is a Canadian citizen and temporary Michigan resident who has been permitted to reside and work in this country since 1986 as a non-immigrant. Though potentially excludable from the United States because he suffers from a Class A medical condition, alcoholism, the Immigration and Naturalization Service granted Probert a waiver of that condition pursuant to 8 U.S.C. § 1182(d)(3)(B), allowing him to enter the country for the purpose of employment.[1] Probert is a professional ice hockey player with the National Hockey League's Detroit Red Wings.
 
 
 3
 In July 1989, Probert pleaded guilty to a charge of importing cocaine for his personal use. The court sentenced him to three months imprisonment and three years of supervised release, with the first three months of release to be served in a community confinement facility. In November 1989, the sentencing judge issued a Judicial Recommendation Against Deportation requiring that the Immigration and Naturalization Service not use Probert's conviction as the basis for deportation. United States v. Probert, 737 F.Supp. 1010, 1011 (E.D.Mich.1989). Sentencing judges have conclusive authority to decide whether a particular conviction should be disregarded as a basis for deportation and their recommendations are binding on the Attorney General. Janvier v. United States, 793 F.2d 449, 452 (2d Cir.1986); Pacheco v. INS, 546 F.2d 448, 452 (1st Cir.1976), cert. denied, 430 U.S. 985, 97 S.Ct. 1683, 52 L.Ed.2d 380 (1977).
 
 
 4
 Shortly after his arrest in March 1989, Probert was suspended by the National Hockey League. Three weeks later, the Immigration and Naturalization Service brought deportation proceedings against Probert because, as a result of his suspension, Probert failed to meet the employment conditions of non-immigrant status. The Immigration and Naturalization Service also revoked Probert's waiver of a Class A medical condition. In February 1990, Probert completed his sentence. In March 1990, Probert was reinstated to the National Hockey League, and has since been in full compliance with terms of his visa and the conditions of his probation. Although the Immigration and Naturalization Service has given Probert permission to play hockey pending deportation hearings, it continues to rely on Probert's failure to comply with the employment terms of his visa, along with his alcoholism, as the basis for deportation. In May 1990, he completed his community-based substance abuse program. He has been at liberty since that time without incident. In June 1990, the Immigration and Naturalization Service notified Probert that it was going to conduct deportation hearings based on his alcoholism and unemployment. The Immigration and Naturalization Service also informed Probert that it intended to detain him pending deportation hearings, pursuant to 8 U.S.C. § 1252(a)(2), because of his felony drug conviction, which qualified him as an "aggravated felon" subject to mandatory detention.
 
 
 5
 Probert brought an action in district court, challenging this attempted detention, alleging that (1) the Judicial Recommendation Against Deportation prevented the Immigration and Naturalization Service from using his conviction as a basis for detention under § 1252(a)(2); (2) section 1252(a)(2) was unconstitutional under the Eighth Amendment because the section did not provide for bail or a bail hearing; and (3) detention under § 1252(a)(2) would violate his Fifth Amendment due process rights. The district court found that (1) the Judicial Recommendation Against Deportation did not prevent the Immigration and Naturalization Service from using his conviction as the grounds for detention because the Judicial Recommendation Against Deportation protected Probert from the Immigration and Naturalization Service's use of his conviction only in deportation proceedings; and (2) section 1252(a)(2) violated due process and the Eighth Amendment prohibition against cruel and unusual punishment. This appeal followed. Probert presently remains on supervised release pending the outcome of this appeal.
 
 
 6
 Upon review, we need not address the constitutionality of former § 1252(a)(2). We affirm the district court because we find that the Judicial Recommendation Against Deportation prevents the Immigration and Naturalization Service from detaining Probert based on his drug conviction. See Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985) ("A decision below must be affirmed if correct for any reason ..."). At the time Probert brought his challenge in district court, Title 8 of U.S.C. § 1252(a)(2) read as follows:
 
 
 7
 (a) Arrest and custody; review of determination by court; aliens committing aggravated felonies; report to Congress committees
 
 
 8
 (2) The Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction. Notwithstanding subsection (a) of this section, the Attorney General shall not release such felon from custody.
 
 
 9
 While this appeal was pending, Congress amended § 1252(a)(2). The current version reads as follows:
 
 
 10
 (B) The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony either before or after a determination of deportability unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings. (amended language appears in italics)
 
 
 11
 H.R. 3049, 102d Cong., 1st Sess. (1991); S. 1620, 102d Cong., 1st Sess. (1991). Under either version of the statute, we find that the detention based on the aggravated felony was improper because we interpret the language of both the prior and now amended provisions of the statute to permit the mandatory detention of an alien convicted of an "aggravated felony" only when that aggravated felony conviction serves as the basis for deportation. This construction properly reflects not only the language of the statute, but our understanding of the Immigration and Naturalization Service regulations as well. The Immigration and Naturalization Service regulations provide: "[i]n initiating deportation or exclusion proceedings, processing officers must charge the aggravated felony ground in the charging document. This is imperative in order to ensure the applicability of the IMMACT provisions limiting the relief from deportation for aggravated felons." IMMACT No. 25, Subject: Aggravated Felons (Charging Documents) reprinted in 68 Interpreter Releases 46 (Jan. 14, 1991). These procedures were not followed in Probert's case. Because the Judicial Recommendation Against Deportation conclusively prevents the Immigration and Naturalization Service from using Probert's drug conviction as a basis for deportation, see Janvier, and the basis for detention must be the same as the basis for deportation, the Immigration and Naturalization Service cannot detain Probert under either version of the § 1252(a)(2). We affirm the district court for the reasons stated above.
 
 
 12
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 13
 The current version of 8 U.S.C. § 1252(a)(2) reflects an amendment adopted on December 12, 1991, when the President signed into law the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. 102-232. In light of this amendment, the Immigration and Naturalization Service recently filed a motion asking us to remand Mr. Probert's case to the district court with instructions to dismiss the action as moot.
 
 
 14
 Paragraph 7 of the INS motion reads as follows:
 
 
 15
 "On the basis of this recent amendment to section 242(a)(2) [8 U.S.C. 1252(a)(2) ]--which eliminates the challenged mandatory detention provision with respect to 'any lawfully admitted alien' such as plaintiff and which makes it possible for plaintiff to obtain the relief sought, release on bond--this case has been rendered moot."
 
 
 16
 Mr. Probert has filed an answer in which he admits the allegations of each paragraph of the motion, including paragraph 7. Mr. Probert's pleading goes on to conclude with this statement: "[Probert] agrees that this Court should vacate the judgment of the district court below and remand with the direction that the case be dismissed as moot."
 
 
 17
 Both parties thus having formally advised us that they consider their lawsuit moot, I should be reluctant to say they are both wrong unless I had a very clear understanding of why they are wrong. Because I lack such an understanding, it would be my preference to grant the motion and remand the case with instructions to dismiss it.
 
 
 18
 As far as the proper interpretation of the prior version of 8 U.S.C. § 1252(a)(2) is concerned, it seems to me that this issue has become a dead letter and that we ought to deal with it accordingly. See Paxton v. INS, 925 F.2d 1465 (6th Cir.1991), an unpublished order of this court remanding for dismissal as moot an appeal that involved both constitutional and interpretational issues that were mooted by an earlier amendment of § 1252(a)(2).
 
 
 19
 Mr. Probert is not asking for our interpretation of the current version of § 1252(a)(2), and I doubt that the judicial power conferred by Article III of the Constitution authorizes us to issue advisory opinions ex mero motu. I think we should treat this case the same way we treated Paxton. My colleagues having seen the matter differently, I respectfully dissent.
 
 
 
 *
 The Honorable James H. Jarvis, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 On November 29, 1990, Congress provided that having a Class A medical condition will no longer be a grounds of exclusion for aliens entering after June 1, 1991. See Immigration Act of 1990, Pub.L. No. 101-649, § 601, 104 Stat. 4978